**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald F. HOLLEY,**
**Defendant-Appellant.**

No. 86–4727.

United States Court of Appeals,
Fifth Circuit.

Aug. 24, 1987.

Jim Waide, Tupelo, Miss., for Donald F. Holley.

Alfred E. Moreton, III, Asst. U.S. Atty., Robert Q. Whitwell, U.S. Atty., Glen H. Davidson, Oxford, Miss., for the U.S.

Before RUBIN, GARZA and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Appellant Donald Holley was tried jointly with W.L. Hyland, and both were convicted of conspiracy to make false entries in the records of the Farmers Home Administration (FmHA) and to participate in the profits therefrom, in violation of 18 U.S.C. § 1006, and to make false and forged contracts in violation of 18 U.S.C. § 495. Holley and Hyland were also convicted of 25 counts of making particular false contracts in violation of 18 U.S.C. § 1001. The de-fendants were represented by joint counsel at trial. Holley now appeals, asserting principally that the trial court erred in failing to conduct the requisite joint representation inquiry under Fed.R.Crim.P. 44(c) and also failed to advise each defendant of his right to separate representation under that rule. Holley does not challenge the sufficiency of the evidence supporting his conviction on appeal. Although the district court failed to execute its responsibilities under Rule 44(c) we perceive no actual joint representation conflict of interest and AF-FIRM.

I.

Three principal characters participated in this one and one-half year long saga that resulted in the approval of 43 separate FmHA repair contracts totalling $44,810. The first, appellant Holley, was an FmHA county supervisor in Fulton, Mississippi re-sponsible for overseeing the rehabilitation of vacant houses carried for resale in the FmHA inventory. The second, co-defend-ant Hyland, was an ex-carpenter and con-struction contractor, who at all times rele-vant to this case was an FmHA district construction inspector. Hyland inspected inventory housing to determine necessary repairs and to verify the satisfactory com-pletion of such repairs. Finally, Steven Browning, Hyland's teen-age stepson, was an unwitting participant to the fraudulent contracts, but was sometimes employed to perform odd-jobs at certain home sites.

Between April, 1981 and October, 1982 Holley approved 43 repair contracts on which Steve Browning was the named con-tractor. Hyland, with Holley's knowledge, signed his stepson's name to the contracts without Browning's consent or approval. Some of the work required under these contracts was performed by Hyland's fami-ly members, including Browning. Various other repair work, however, remained in-complete. Checks for the repair contracts were issued in the name of Steven Brown-ing, were signed in Browning's name by co-defendant Hyland's wife, and were cashed by Browning's grandmother. At

trial, Holley admitted that he falsely represented to an FmHA investigator that he witnessed Browning signing each of the repair contracts. Holley also admitted that Hyland signed Browning's name to the contracts, but he said that this was common practice in his experience with the FmHA. He testified that in 1982, after reviewing the FmHA conflict of interest regulations, he discontinued authorizing contracts to Steven Browning. Holley and Hyland were both convicted and given suspended sentences with four years probation. Holley alone maintains this appeal.[1]

## II.

Appellant's primary assertion of reversible error is that the district court failed to comply with Fed.R.Crim.P. 44(c). That rule provides, in pertinent part:

> Whenever two or more defendants ... are represented by the same retained or assigned counsel ... the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation.

Fed.R.Civ.P. 44(c). The district judge in this case neither made the requisite inquiry nor rendered the appropriate advice. This error, appellant now urges, requires reversal. We disagree.

In *United States v. Benavidez*, 664 F.2d 1255, 1259 (5th Cir.1982) we held that "even if the trial court fails to comply fully with the mandates of Rule 44(c), a defendant must still demonstrate an 'actual conflict of interest' before we will reverse his conviction." In *Benavidez* the trial court did inquire concerning joint representation, but it failed to "personally advise" the defendants of their rights as required by the rule. Although in this case the district court conducted neither an inquiry nor rendered the advice, this alone does not require a different result. As the Advisory Committee notes to Rule 44(c) state: "[t]he failure in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a convic-

tion of a jointly represented defendant." Fed.R.Crim.P. 44(c) Advisory Committee Note. *Benavidez* instructs that the goal of Rule 44(c) is to prevent conflicts that may be associated with joint representation. "The inquiry and advice provided by that rule are not ends in themselves; they are a procedure designed to prevent conflicts of interest." *United States v. Lyons*, 703 F.2d 815, 820 (5th Cir.1983) (citation omitted). Evaluating the trial court's compliance with Rule 44(c) thus cannot be divorced from a showing that a defendant has been denied his sixth amendment right to effective counsel. "If there is no actual conflict, then the rule's purpose will not be served by reversal of a conviction." *Benavidez*, 664 F.2d at 1258. We do not condone the trial court's omission of its duty, although we add that careful government counsel should ordinarily wish to draw a court's attention to Rule 44(c). Relying upon *Benavidez*, however, we conclude that Holley must demonstrate a violation of his sixth amendment right to effective counsel resulting from the joint representation before his conviction will be reversed for the court's oversight of Rule 44(c).

The sixth amendment test, recently reiterated by the Supreme Court, is whether Holley can demonstrate that his attorney actively represented conflicting interests and the conflict adversely affected his lawyer's performance. *Burger v. Kemp*, —— U.S. ——, ——, 107 S.Ct. 3114, 3121, 97 L.Ed.2d 638 (1987), (quoting *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)). *See also Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). This circuit has explicated the constitutional test as follows:

> A conflict of interest is present whenever one defendant stands *to gain significantly* by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.

*Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir.1975) (emphasis added). *See also Benavidez*, 664 F.2d at 1260; *Turn-*

1. Holley and Hyland filed a joint notice of appeal. Hyland voluntarily dismissed his appeal.

*quest v. Wainwright,* 651 F.2d 331, 333 (5th Cir.1981).

▮ Appellant, acknowledging the necessity of satisfying these standards, asserts that his counsel could have made three specific exonerating arguments, but for the joint representation of co-defendant Hyland. First, Holley claims that his counsel was precluded from arguing that he received none of the money from the FmHA contracts, "directly or indirectly", because this would have been damaging to co-defendant Hyland. This argument reveals counsel's misunderstanding of the nature of the charged offense. Count one charges Holley under 18 U.S.C. § 371 with conspiracy to commit substantive offenses against the United States. Completion of the charged offense is unnecessary to support a conviction for conspiracy. Actual receipt of money or benefits, as required by 18 U.S.C. § 1006, was therefore not required to convict Holley under count one. Additionally, it does not necessarily follow that if Holley never received any of the money, Hyland was *a priori* the "more culpable" party. In fact, at trial Hyland testified that he never received any money from the contracts either. This argument thus presents neither the requisite benefit to Holley nor the possibility of damage to the cause of codefendant Hyland sufficient to show an actual conflict.

Holley charges that he could not assert the defense of "no knowledge" that Browning's signatures were unauthorized because, he argues, this would incriminate Hyland. We do not share his view. Hyland testified that he *was* authorized by his stepson Browning to execute the contracts. Not only is Holley's assertion non-detrimental to Hyland, but both parties' positions are mutually supportive.

Finally, Holley queries "was not an argument that Holley had no motive to commit the crime since he stood to gain none of the money, not an argument by which Holley stood to 'gain significantly' while 'damaging' Hyland?" We think not. This argument boils down to the proposition that defense counsel should or could have exonerated Holley by heaping more blame on Hyland. In *Benavidez,* this Court expressed skepticism that "there can be a

constitutional violation when the only claim of conflict is that a defendant should have abandoned the common defense and invited reciprocal recrimination, not because the government introduced evidence indicating the defendant's innocence, but solely because the government made a stronger case against the codefendant." 664 F.2d at 1260. In any event, it appears that this last argument was presented to the jury. Holley testified that because of the difficulty of finding contractors to do this type of work, his main concern was with "getting the job done." His attorney in closing argument suggested that this concern indicated that Holley's motive for approving the contracts was not criminal in nature, but a "good-faith" effort to carry out the responsibilities of his job. Holley has offered no other evidence which would suggest an actual conflict between the co-defendants' positions regarding motive. He has directed us to no additional evidence or arguments that would have exculpated Holley but inculpated Hyland. *See United States v. Lyons,* 703 F.2d at 820. "Mere speculation about a conflict ... is insufficient to establish ineffective representation." *United States v. Soudan,* 812 F.2d 920, 926 (5th Cir.1986) (citation omitted). Holley has not shown an actual conflict of interest.

### III.

▮ Appellant raises several other issues, each of which is meritless. First, Holley asserts that he should have been acquitted on count one because there is no evidence that he received or intended to receive any benefits from the FmHA contracts, and this is the "gravamen of the crime defined in 18 U.S.C. § 1006." This position founders on an evident misunderstanding of count one, which charged Holley and Hyland with conspiracy under 18 U.S.C. § 371, to violate 18 U.S.C. § 1006 and § 495. "When a conspiracy to violate two statutes is alleged, the jury may find the defendant guilty if they believe beyond reasonable doubt that he or she conspired to violate either one of those statutes." *United States v. Wilkinson,* 601 F.2d 791, 796 (5th Cir.1979). *See also United States v. Ortiz-Loya,* 777 F.2d 973, 982 (5th Cir.

1985); *United States v. Lyons,* 703 F.2d at 821. Count one, specification two charges Holley with conspiracy to violate 18 U.S.C. § 495 which provides criminal punishment against anyone who:

> falsely makes, alters, forges, or counterfeits any ... contract or other writing for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money....

This provision requires no intent to participate in the benefits of the conspiracy; it depends solely upon Holley's having enabled another person to receive a sum of money from the United States. Holley does not challenge the sufficiency of the evidence supporting conspiracy to violate 18 U.S.C. § 495. Because the conspiracy to violate this provision is sufficient to support Holley's conviction under count one of the indictment, we need not address the sufficiency of evidence to support Holley's participation in a conspiracy to violate § 1006.

■ Second, Holley asserts that the district court erred in determining "materiality" as a matter of law. The trial court instructed the jury that "[t]he use of a false or forged name by Farmers Home Administration employees to obtain payment under a Farmers Home Administration contract is a fact material to a matter within the jurisdiction of the Farmers Home Administration." Holley asserts that because he could not present this issue to the jury, he was deprived of his right to have a trier-of-fact find all elements of an offense. This circuit has held, however, that "there are two historical exceptions to the general principle that the trial court must submit every essential element of the offense to the jury: questions of pertinency and materiality." *United States v. Bass,* 784 F.2d 1282, 1285 n. 3 (5th Cir. 1986). *See also, United States v. Johnson,* 718 F.2d 1317, 1324 n. 20 (5th Cir.1983) (en banc) (materiality of false statements is a question for the court). Accordingly, the district court did not err in determining this issue as a matter of law.

■ Finally, Holley asserts that the district court failed to adequately define the elements of a substantive violation of 18 U.S.C. § 1006 as used in count one, and the term "forgery" in counts 2 through 26. Because no objections were made to these instructions at trial, we review only for plain error. Fed.R.Crim.P. 52(b). Having analyzed the instructions given to the jury, we are unable to find any such error. Relevant to count one, the district court adequately defined the elements of a conspiracy under 18 U.S.C. § 371, defined "knowingly" and "willfully", and read the relevant portions of the substantive provisions Holley was charged with conspiring to violate. Moreover, we find no error in the failure of the district court to define "forgery" with respect to counts 2 through 26. Under the indictment, the term forgery meant that Browning's signature was falsified. That a particular false document used to perpetrate the deception under 18 U.S.C. § 1001 was forged does not transform a false statement offense into a forgery violation requiring intent to defraud.

For the foregoing reasons, we AFFIRM Holley's conviction.