UNITED STATES of America,
Plaintiff–Appellee,

v.

Elic L. GILLIAM, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Roy Lee GILLIAM, Defendant–Appellant.

Nos. 91–5862, 91–5864.

United States Court of Appeals,
Fourth Circuit.

Argued June 5, 1992.

Decided Sept. 17, 1992.

THE COURT: I didn't know what was going to happen at the sentencing phase.

Thomas Lee Rasnic, Rasnic & Rasnic, Jonesville, Va., argued, for defendant-appellant Elic Gilliam.

Donald Edward Earls, Norton, Va., argued, for defendant-appellant Roy Gilliam.

Eric M. Hurt, Summer Intern, Office of U.S. Atty., Roanoke, Va., argued (E. Montgomery Tucker, U.S. Atty., Jerry W. Kilgore, Sp. Asst. U.S. Atty., Abingdon, Va., Stephen Urban Baer, Office of U.S. Atty., Roanoke, Va., on brief), for plaintiff-appellee.

Before MURNAGHAN and HAMILTON, Circuit Judges, and LEGG, United States District Judge for the District of Maryland, sitting by designation.

## OPINION

MURNAGHAN, Circuit Judge:

The instant appeal was brought by Elic Gilliam ("Elic") and his son Roy Lee Gilliam ("Roy Lee") (collectively, the "Gilliams") who were convicted in a jury trial of multiple counts of money laundering, conspiracy, and intent to distribute marijuana and cocaine. Roy Lee has argued that he had ineffective assistance of counsel at trial because the same counsel represented both him and his father, who was a co-defendant. Both appellants also have argued that the Oregon search warrants were insufficient, that the offenses charged in the indictment regarding money laundering were unconstitutionally vague, that the Government failed properly to establish the chain of custody of certain forensic evidence, that the evidence of possession of marijuana and cocaine was insufficient, and that none of the events which led to conviction occurred in the Western District of Virginia where the trial was held.

Because we conclude that an actual conflict quite possibly developed at trial due to the joint representation of Roy Lee and Elic, we conclude that the district court erred in failing to conduct a Federal Rule of Criminal Procedure 44(c) hearing.[1] Accordingly, we remand for such a hearing to be conducted in Roy Lee's case. Finding no error, except any reversal and retrial necessity for Roy Lee which may arise as a result of the Rule 44(c) hearing, we otherwise affirm the convictions.

## I.

The Gilliams were indicted on May 23, 1990 on various money laundering and drug trafficking charges, namely, (1) conspiracy to conduct and attempt to conduct financial transactions affecting interstate commerce (money laundering), in violation of 18 U.S.C. § 371; (2) money laundering, in violation of 18 U.S.C. §§ 2, 1956(a)(1)(A)(i), (B)(i) and (ii) and 31 U.S.C. §§ 5313, 5324(3) and 5322(b); (3) conspiracy with intent to distribute marijuana, in violation of 21 U.S.C. § 846; (4) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and (5) possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). In the indictment, the grand jury charged that the Gilliams had been involved in marijuana cultivation and distribution from 1981 through February of 1990, growing marijuana on a farm in Oregon and transporting it to Virginia for distribution. The indictment also alleged that the Gilliams had spent in excess of one million dollars over and above their legitimate sources of income.

The indictments were the result of a search of a farm owned by the Gilliams in Virginia, simultaneous with a search of Elic's farm in Oregon. On the Virginia farm the officers recovered marijuana, which was being dried by a heater, triple beam scales, drying lights, large blue trash cans, and eleven grams of cocaine. The officers also recovered approximately $117,000 cash in various places on the farm, some of which was recovered from a locked truck. Also inside the locked truck, officers located a notebook containing

---

1. That rule provides:

   Whenever two or more defendants have been jointly charged ... or have been joined for trial ... and are represented by the same retained or assigned counsel ... the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

terms such as "Big Buds," and other purportedly marijuana-related terms.

Likewise, on the Oregon farm, officers found evidence of a recently harvested field, which they determined to have grown approximately 3,000 marijuana plants, blue trash cans containing 127 pounds of marijuana,[2] triple beam scales, working gloves and tarps that smelled like marijuana, and various packages of marijuana seeds labelled as "O Big Buds XXX," "V Good Seed Stock," and "V Good Stock."[3]

The same counsel represented both Roy Lee and Elic. It is undisputed that the district court never conducted a hearing as required by Rule 44(c) of the Federal Rules of Criminal Procedure. Following an eight day jury trial, a guilty verdict was returned as to all counts against the Gilliams. The instant appeal followed.

## II.

### A. *Ineffective Assistance of Counsel*

■■■ Turning to the issue of the ineffective assistance of counsel, Rule 44(c), being cast in categorial preemptive terms, provides:

> *Whenever* two or more defendants have been jointly charged ... or have been joined for trial ... and are represented by the same retained or assigned counsel ... the court *shall* promptly inquire with respect to such joint representation and *shall* personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court *shall* take such measures as may be appropriate to protect each defendant's right to counsel.

(Emphasis added). While we have held that "in the absence of a specific objection, the trial court may assume that joint representation does not present any conflict," that statement is limited by the additional language "unless the court knows or reasonably should know that a particular con-

flict exists." *United States v. Akinseye,* 802 F.2d 740, 744 (4th Cir.1986), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987) (citing *United States v. Ramsey,* 661 F.2d 1013, 1018 (4th Cir.1981), *cert. denied,* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982)). Thus, "if the court is aware, or should be aware, of a particular conflict, it should conduct a *sua sponte* inquiry into its existence." *Id.* Moreover, although a defendant may waive his right to conflict-free representation, *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978), such waiver must be "knowing, intelligent, and voluntary." *Akinseye,* 802 F.2d at 745 (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970)).

> With respect to waiver, we have held: Rule 44 and its notes discuss the type of waiver which the district court should secure. The court must personally address each defendant and inform him of the potential hazards of representation by a single attorney, as well as his right to separate representation. In turn, the defendants are free to ask the court questions about the nature and consequences of the representation:
>
> Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney and if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.

*Akinseye,* 802 F.2d at 745 (quoting Fed. R.Crim.P. 44(c) Advisory Committee Note).

While we have emphasized the importance of the right to conflict free representation, we have held that the failure of the court to make inquiry under Rule 44(c) is not, standing alone, sufficient to require

---

**2.** The blue trash cans found on the Oregon farm were identical to those found on the Virginia farm.

**3.** Officers testified at trial that such labels were used by drug traffickers to refer to the grade of marijuana.

reversal of a conviction. *United States v. Arias*, 678 F.2d 1202, 1205 (4th Cir.), *cert. denied*, 459 U.S. 910, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982). Most circuits require a defendant who fails to object to the joint representation at trial to demonstrate, on appeal, an actual conflict of interest. *See, e.g., United States v. Crespo de Llano*, 838 F.2d 1006, 1008 (9th Cir.1987); *United States v. Holley*, 826 F.2d 331, 334 (5th Cir.1987), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988). *But see United States Ex. Rel. Hart v. Davenport*, 478 F.2d 203 (3rd Cir.1973) (holding that where record shows no inquiry by Court concerning conflicts in joint representation, prejudice and non-waiver should be presumed).

■ In the instant case, we find that Roy Lee has alleged an actual conflict, requiring a Rule 44(c) hearing. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Four days into the jury trial, the Government offered Roy Lee and Elic a plea agreement wherein Elic would be sentenced to ten years imprisonment and Roy Lee would be sentenced to seven years. The terms of imprisonment that the two would face if they accepted the agreement would have meant that probably Elic would spend the rest of his life in jail; while Roy Lee, a relatively young man, would not. According to Roy Lee, Elic vehemently opposed accepting the plea agreement, contending that he did not want to spend his final days in jail and insisting that they could beat the charges together.

On appeal, Roy Lee has contended that if he had his own attorney he would have been talked into taking the plea arrangement. The trial attorney, when faced with one client who wished to accept the plea

and one who did not, was unable to provide effective assistance to both clients in that situation, he has contended.

New counsel appeared for Roy Lee at sentencing and orally advised the court of the alleged conflict of interest which, he said, had come to light because Roy Lee had discussed it with his mother. The district court did not hold a hearing, but ruled that (i) the ineffective assistance of counsel argument had been made too late and (ii) the district court judge did not witness anything during trial that would suggest either a conflict or ineffective assistance of counsel.

We hold that the district court should have held a 44(c) hearing when the issue of a conflict was raised, albeit at the last minute, at sentencing. The lower court should have held an evidentiary hearing to determine (i) whether there was a conflict and (ii) if so, whether it rendered assistance to Roy Lee ineffective. Therefore, we remand the case to the district court to conduct such a Rule 44(c) hearing.[4]

By remanding the case, we do not mean to dictate the result to be reached by the lower court when it exercises its discretion in such matters. There exists substantial evidence, although not on the district court record, to suggest that either (i) the conflict was manufactured out of whole cloth, or (ii) there exists no remedy to redress the conflict because the plea bargain offered to Roy Lee during trial is no longer available. There is also no suggestion that the alleged conflict impaired the ability of counsel to present the case to the jury. The conflict is involved only insofar as it allegedly impaired the ability of Mr. Rasnick to advise Roy Lee independently of the merits of the plea arrangement.[5]

---

**4.** Assuming that up until the time of the government's offer of the plea agreement there was no conflict of interest between father, Elic, and son, Roy Lee, there may well have developed a conflict upon the offer of the plea agreement. The joint representation by single counsel may then have brought about conflict since, had Roy Lee accepted the deal, the government probably would have required, as a condition of the plea bargain, that Roy Lee testify against his father, Elic. In this situation of direct conflict, the

lawyer might be constrained from correctly and properly advising both clients.

**5.** *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980) (holding that "in order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance").

During oral argument, Mr. Rasnick, who represented both Elic and Roy Lee at trial and Elic

## B. Insufficiency of Search Warrants Executed in Oregon

■ Next, the Gilliams have contended that the district court erred in permitting the introduction of evidence seized in Oregon because the search warrant for Elic's Oregon farm contained a defective boundary description in that it erroneously stated that the property bordered the Snake River. Because the property did not border the Snake River, the Gilliams claim that the search warrant was defective.

In determining the sufficiency of the description of a place to be searched, the key is "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premises might be mistakenly searched." *United States v. McCain*, 677 F.2d 657, 660 (8th Cir.1982).

In the instant case, the initial search warrant, providing for an aerial search, contained the following description:

A parcel of land approximately 45.5 acres containing one dwelling, a large storage building, a dilapidated small house, a smaller outbuilding, being the only farm on the N.E. corner of Ripple Road and Buckhorn Road in Malheur county, Oregon commonly referred to as the Weiser annex bordered by Buckhorn Road. On the S.W. boundary a standing cornfield, on the S.E. boundary the Snake River, on the East boundary and a standing cornfield on the North and N.W. boundaries.

The only inaccuracy in the foregoing description apparently is the fact that the farm at issue does not border the Snake River. However, the search warrant describes the farm as "the *only* farm on the N.E. corner of Ripple Road and Buckhorn

Road in Malheur County, Oregon commonly referred to as the Weiser Annex bordered by Buckhorn Road." (Emphasis added). As such, the warrant described the farm with particularity and was sufficient to avoid the risk of a search of the wrong property. Therefore, we conclude that the warrant was sufficient to support the search and the evidence obtained from the Oregon farm is not excludable on that basis.

## C. Chain of Custody of Certain Forensic Evidence

The Gilliams also have argued that the district court erred in admitting certain forensic evidence obtained from the Virginia search because the chain of evidence was not properly established. Based upon the evidence in the record, we find that the government established a sufficient chain of custody. *See United States v. Howard–Arias*, 679 F.2d 363, 365–66 (4th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 165, 74 L.Ed.2d 136 (1982). Accordingly, the district court did not err in refusing to exclude evidence based upon the Gilliams' argument that an insufficient chain of custody existed.

## D. Unconstitutional Vagueness Argument With Respect to Money Laundering Statutes

■ Next, the Gilliams have maintained that the money laundering statutes under which they were convicted are unconstitutionally vague in that the crimes are not described with sufficient certainty so that ordinary persons can determine what conduct is criminalized. The Government, on the other hand, argues that the statutes are not vague and that even if vague, the Government introduced sufficient evidence

on appeal, was questioned about the conflict. He told the panel that he explained to his clients at the outset of the case the possible conflicts involved when an attorney represents two defendants in a criminal case, and that they elected to proceed with him (he was retained rather than court-appointed).

During trial, Mr. Rasnick strongly recommended to both clients that they accept the plea bargain, which he characterized as a "mighty fine deal." Both Roy Lee and Elic, he said,

decided to reject the deal and take their chances with the jury. Mr. Rasnick saw nothing to suggest that the elder Gilliam prevailed upon the younger to reject, albeit reluctantly, the government's plea bargain.

Roy Lee did not first contend that his father talked him out of accepting the plea bargain until shortly before the sentencing. In fact, the argument about the conflict was not raised in the district court until the day of sentencing.

to demonstrate that the Gilliams understood the money laundering prohibitions.

The statutes at issue, 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii) provide, *inter alia,* that:

(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of a specified unlawful activity—

(A)(i) with the intent to promote the carrying on of specified unlawful activity; or

. . . .

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds as specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under state or federal law,

is guilty of money laundering in violation of the statute. In evaluating a criminal statute under the void for vagueness doctrine, the Supreme Court has established a two part test, stating first that "[a] penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). Second, the criminal offense must be described "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.* Moreover, "vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied basis." *Maynard v. Cartwright,* 486 U.S. 356, 361, 108 S.Ct. 1853, 1857–58, 100 L.Ed.2d 372 (1988).

As applied to the Gilliams, we conclude that the statute is not vague. To prove a case under section 1956(a)(1)(B)(i) or (ii), "the government must prove that the transaction was designed to conceal one or another of the enumerated attributes of the proceeds involved." *United States v. Jack-son,* 935 F.2d 832, 838–39 (7th Cir.1991) (citing *United States v. Sanders,* 928 F.2d 940, 946 (10th Cir.1991)). Therefore, the Government must prove a specific intent to structure a transaction so as to conceal the true nature of the proceeds. *Id.* Requiring the proof of specific intent satisfies the first element of the void for vagueness test, in that the convicted must have had notice that the conduct is proscribed in order to have the specific intent required for the money laundering crime. *Jackson,* 935 F.2d at 839. *See also Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 342, 72 S.Ct. 329, 331, 96 L.Ed. 367 (1952); *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

In the instant case, the Government introduced evidence showing that the Gilliams intended to structure their transactions so as to avoid the reporting requirements and so as to hide the fact that the funds being used were drug proceeds. The Government introduced evidence that the Gilliams had spent one million dollars over and above any legitimate sums of income. An Internal Revenue Special Agent, Tom Semesky, testified that the Gilliams had structured their bank deposits to avoid reporting requirements for transactions involving $10,000. Semesky also testified that the Gilliams had structured a land purchase in Scott County in order to accumulate capital for the purchase. Testimony indicated that in purchasing the property, the Gilliams brought in $18,000 in cash and a check, requesting three separate receipts, two for $9,000 each and another for the check, presumably to avoid the reporting requirements.

The Government also introduced the testimony of Katherine Miller with the Farmer's Home Administration who testified that the Gilliams made their loan payments in cash and that she had informed Roy Lee that if he brought in more than $10,000 she would have to report it to the IRS. She testified that upon informing Roy Lee of that fact, he replied to the effect that banks also do that. Furthermore, testimony of employees at the First American

Bank in Kingsport, Tennessee indicated that they had discussed the reporting requirement with the Gilliams. A teller at the bank testified that when Roy Lee brought in $9,000 in cash for deposit, she informed him that she would report the amount, whereupon he said he thought the reporting amount was $10,000. Then, he started bringing in deposits of approximately $5,000 to $6,000 and the teller again informed him that she was required to report $5,000 transactions. Following that conversation, he began to bring in $4,500 or less in cash. The foregoing testimony is more than sufficient evidence that the Gilliams understood the reporting requirements and how to structure their deposits to avoid such reporting. Therefore, as applied to the Gilliams, the statute is not vague with respect to the first issue because the evidence was sufficient to show that the Gilliams possessed the requisite intent, which implicitly confirms that they had notice of what conduct was proscribed.

■ Turning to the second issue, whether the statute is sufficiently defined so as to circumscribe discretionary enforcement, we conclude that the numerous and detailed definitions of the terms used in the money laundering statute sufficiently curtails the discretion of law enforcement officers. *Jackson*, 935 F.2d at 839.

### E. *Sufficiency of the Evidence*

■ Next, the Gilliams have argued that the Government failed to establish either actual or constructive possession of drugs necessary for a conviction for possession with intent to distribute. We review the sufficiency of the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

There was clearly enough evidence to establish constructive possession of the drugs. When the search was executed on the property owned and occupied by the Gilliams, marijuana was found in a variety of places, triple beam scales were found, drying lights, large sums of cash and a notebook with writing discussing "Big Buds" and other marijuana-related terms.

Furthermore, at trial Elic's ex-wife testified that he had been cultivating marijuana since 1981. Claude Sloan testified that he had seen Roy Lee weighing and bagging marijuana and Ricky Sloan testified that he had weighed marijuana with Roy Lee in Elic's basement. With respect to the cocaine, the officer executing the search testified that he located the 11.25 grams of cocaine in a mason jar which was situated under a plastic tarp to the side of Elic's driveway, approximately 30 feet from the house. Furthermore, marijuana residue was found along with the cocaine. Under such circumstances, viewing the evidence in the light most favorable to the government, we determine that the evidence is sufficient to support the Gilliams' convictions of possession with intent to distribute marijuana and cocaine.

### F. *Sufficiency of Proof that Money Laundering Crimes Occurred in Virginia*

■ Finally, the Gilliams have contended that there was no evidence that the offenses were committed in the Commonwealth of Virginia or in the Western District of Virginia. The Gilliams have argued that since they banked in Tennessee, and since the cultivation of marijuana occurred in Oregon, no evidence links them with the commission of a crime in the Commonwealth. Therefore, they argue that venue was improper in the Western District of Virginia.

It is clear that an offense committed in more than one district may be prosecuted in any district that such offense was begun, continued, or completed. 18 U.S.C. § 3237(a). Furthermore, a conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed. *United States v. Lewis*, 676 F.2d 508, 511 (11th Cir.), *cert. denied*, 459 U.S. 976, 103 S.Ct. 313, 74 L.Ed.2d 291 (1982). In the instant case, the evidence was sufficient to support venue in the Western District of Virginia.

The Gilliams' farm was located in Virginia and evidence was recovered therefrom

which indicated that the Gilliams were trafficking drugs. With respect to the money laundering convictions, evidence at trial indicated that the Gilliams had purchased property in Scott County by structuring the capital to avoid the reporting requirements, in violation of the money laundering statutes. Furthermore, the evidence indicated that the Gilliams made numerous land payments in cash on a variety of Virginia properties, which payments were made from money earned in trafficking drugs. The foregoing amounts to sufficient evidence linking the Gilliams with the Commonwealth for purposes of venue.

### III.

To sum up, we remand to the district court to conduct a Federal Rule of Criminal Procedure 44(c) hearing to determine whether Roy Lee was deprived of the effective assistance of counsel because of the joint representation of himself and Elic. In all other respects, the district court's opinion is affirmed.

*REVERSED AND REMANDED IN PART AND AFFIRMED IN PART.*

HAMILTON, Circuit Judge, concurring in part and dissenting in part:

I join Judge Murnaghan's opinion in all but Part II.A.

Elic and Roy Lee, father and son, were tried together and represented by the same trial counsel, Thomas Rasnic, who faithfully instructed the defendants as to the perils of joint representation. The district court did not conduct a Rule 44(c) hearing. During the fourth day of the trial, the government offered the defendants plea agreements in which Roy Lee would accept seven years imprisonment and Elic ten. Rasnic vehemently recommended that each defendant accept the plea agreement, which he characterized as a "mighty fine deal." The defendants declined because they claimed they were not guilty of anything. Because neither professed guilt, the defendants perceived no conflict of interest with their joint representation and did not raise the issue with the district court. Both defendants were ably represented, but were

convicted. Rasnic saw nothing to suggest that Elic pressured Roy Lee into rejecting the plea agreement which he had been offered. At sentencing, Roy Lee, now represented by new counsel, argued for the first time that his chosen trial counsel's performance fell below an objective standard of reasonableness because an actual conflict of interest arose when the government made the plea offer. In support of this argument, Roy Lee points to his apparent willingness to accept his plea agreement and Elic's vehemence against accepting the plea agreement tendered him. The district court held that (1) the ineffective assistance of counsel argument was raised too late and (2) it was aware of nothing that occurred at trial which demonstrated a conflict of interest. Because the majority reaches the untenable conclusion that the district court should have conducted a Rule 44(c) hearing at sentencing, I respectfully dissent.

The majority opinion begins, where it should, with Fed.R.Crim.Proc. 44(c). It provides:

Whenever two or more defendants have been jointly charged ... and are represented by the same ... counsel, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

At first blush, it would appear Rule 44(c) requires a *per se* reversal where defendants are jointly represented and no evidentiary hearing is held, but we have declined to adopt such an approach. *See United States v. Arias*, 678 F.2d 1202, 1205 (4th Cir.), *cert. denied*, 459 U.S. 910, 103 S.Ct. 218, 74 L.Ed.2d 173 (1982). There, we noted the omission of a Rule 44(c) hearing did not, in and of itself, necessitate a reversal despite the Rule's apparent unequivocal language. *Id.* We relied on the Rule's Advisory Notes, which state: "The failure

in a particular case to conduct a rule 44(c) inquiry would not, standing alone, necessitate the reversal of a conviction of a jointly represented defendant."

In *United States v. Tatum*, we observed that "[t]he sixth amendment is implicated only when the representation of counsel is adversely affected by an *actual* conflict." 943 F.2d 370, 375 (4th Cir.1991). Numerous circuits have held that in the absence of a specific objection to joint representation, the defendant must demonstrate an actual conflict. *See, e.g., United States v. Crespo de Llano*, 838 F.2d 1006 (9th Cir. 1987); *United States v. Holley*, 826 F.2d 331 (5th Cir.1987), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988). In *United States v. Akinseye*, 802 F.2d 740, 744 (4th Cir.1986), *cert. denied*, 482 U.S. 916, 107 S.Ct. 3190, 96 L.Ed.2d 678 (1987), we noted "[i]n the absence of a specific objection, the trial court may assume that joint representation does not present any conflict, unless the court knows or reasonably should know that a particular conflict exists." (citing *United States v. Ramsey*, 661 F.2d 1013, 1018 (4th Cir.1981), *cert. denied*, 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (1982)).

Thus, where a defendant makes no specific objection to joint representation, our circuit will disturb a conviction for failure to conduct a Rule 44(c) hearing in two distinct situations: (1) where an actual conflict is present or (2) where the district court knew or should have known that a particular conflict existed.

Under the first alternative, Roy Lee must show that an actual conflict existed. To demonstrate this, the defendant "must show that there was some 'plausible alternative defense strategy or tactic' that might have been pursued, [or] an alternative strategy that 'was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *Guaraldi v. Cunningham*, 819 F.2d 15, 17 (1st Cir.1987) (quoting *United States v. Fahey*, 769 F.2d 829, 836 (1st Cir.1985)) (further citations omitted). Roy Lee claims that, in the absence of dual representation, he would have accepted the seven-year plea offer. The record simply belies this assertion.

The record evidence demonstrates that Roy Lee and Elic were not inclined to accept the plea because they thought they could "beat the rap." In addition, counsel at argument conceded that when he discussed the government's plea offers with appellants, they perceived no conflict because they denied any wrongdoing. No conflict of interest arose because counsel strongly and fervently recommended that both appellants accept the plea agreements. As trial counsel noted, it was "a mighty fine deal." What is patently clear is that Roy Lee perceived a conflict when it was posh to do so—after his conviction when facing a sentence substantially in excess of the seven years he had been offered. Here, Roy Lee's objection relates solely to the sentence he received and not to any dissatisfaction with his chosen counsel's performance at trial.

In *Ramsey*, the alleged conflict arose from trial counsel's inability to zealously and effectively present each of the three jointly-represented defendant's theory of defense. The defendants were charged with conspiracy to import marijuana, conspiracy to distribute cocaine and distribution of cocaine. Defendants, Lee Ramsey and Sharon Wray, denied any involvement with illicit drug dealings. Defendant, Zed Ramsey, contended that while he had conversations with unindicted coconspirators regarding drug smuggling, these conversations were a hoax in order to obtain their assistance in financing his real estate developments. *Id.* at 1015–17. In holding that the appellants showed neither an actual conflict of interest nor that the district judge should have been aware of the possibility of some particular conflict, we noted: "Viewing these theories from the perspective of a completed trial, it is clear that there is nothing inherently inconsistent about [the defense theories], and that a competent trial attorney could zealously and effectively present each of the theories to a jury." *Id.* at 1019.

Our case is analogous to *Ramsey*. There is nothing intrinsically inconsistent with the appellants' defense theories—they both consist of a general denial of any wrongdoing. In addition, there was nothing inconsistent with appellants' interests once the

government offered the plea agreements. While one could argue that separate counsel for Roy Lee could have bargained for a "sweeter deal" in return for Roy Lee's testimony against Elic, this is not a rational assessment of the circumstances. First, both Roy Lee and Elic categorically rejected the plea agreements at the inception despite Rasnic's recommendation. Second, Roy Lee and Elic unequivocally denied any involvement with illicit drugs. Third, reliance on Roy Lee's testimony is misplaced in light of the fact that the government also offered Elic a plea, and thus, his testimony was unnecessary. Finally—this bears repeating—Rasnic strongly recommended acceptance of the plea offers. Thus, Rasnic fulfilled his obligation of zealously and effectively representing his clients.

This case is simply not on par with cases in which an actual conflict was found. For example, this is neither a case where defense counsel failed to cross-examine a prosecution witness whose testimony was material, nor one where counsel failed to resist the presentation of arguably admissible evidence. *See Glasser v. United States*, 315 U.S. 60, 72–75, 62 S.Ct. 457, 465–67, 86 L.Ed. 680 (1942). In addition, this case is not one in which a jointly-represented defendant had a stake in the outcome of the proceeding. *See, e.g., Hoffman v. Leeke*, 903 F.2d 280 (4th Cir.1990) (defendant's trial counsel negotiated a cooperation agreement for defendant's coconspirator, under which coconspirator became witness against defendant). These cases involve profoundly severe conflicts of interest as opposed to the non-existent conflict of interest currently before us. Under the circumstances, an actual conflict did not exist. Consequently, under the first alternative, no remand is warranted.

The second alternative places a burden on the district court to inquire into the existence of a potential conflict of interest when the district court "knows or reasonably should know that a particular conflict exists." *Ramsey*, 661 F.2d at 1019. "If the court is aware, or should be aware, of a particular conflict, it should conduct a *sua sponte* inquiry into its existence." *Akinseye*, 802 F.2d at 744. The majority concludes that the district court should have conducted an evidentiary hearing when Roy Lee raised the alleged conflict of interest at sentencing despite the fact that the alleged conflict occurred at trial and not at sentencing.

The majority's novel insistence on a Rule 44(c) hearing at sentencing is misconceived. The cornerstone of placing this burden on the district court is to ensure that the trial continues without conflicts of interest. The Advisory Notes to Rule 44(c) state "the mere fact that a rule 44(c) inquiry was conducted does not relieve the court of all responsibility in this regard thereafter. The obligation placed upon the court by rule 44(c) is a continuing one, and thus in a particular case further inquiry may be necessary on a later occasion because of new developments suggesting a potential conflict of interest." In *Akinseye*, where the alleged prejudice arose because one co-defendant took the stand and the other did not, we noted that once the testifying defendant took the stand "the better practice would have been for the trial court to conduct a further rule 44 inquiry when Akinseye took the stand and, if necessary, secure a further waiver," 802 F.2d at 745 (footnote omitted), although the one previously secured was sufficient to withstand attack on appeal.

The common thread throughout these authorities and its application here is that the district court's burden of inquiry does not arise at sentencing where the alleged conflict arose at trial, there was nothing at the time the alleged conflict of interest arose to suggest that the district court knew or could have known that a particular conflict existed, and the conflict no longer exists. Rather, its duty to inquire arises where: (1) the circumstances suggest that a particular conflict of interest exists, (2) a specific objection to the joint representation is noted at the time the alleged conflict arises, or (3) a specific objection to the joint representation is noted at a time where the alleged conflict of interest continues to infect the pending proceeding.

Without question, there is nothing in the record to suggest that the district court knew or should have known of the possibility that a particular conflict of interest ex-

isted at the time the government offered the plea agreements. The district court was not even tangentially appraised of any plea negotiations. *Cf.* Fed.R.Crim.Proc. 11(e)(1)(C) (district court shall not participate in plea negotiations). In addition, there was no specific objection at the time the alleged conflict of interest arose. Finally, the objection was raised at a time where the alleged conflict of interest did not infect the ongoing proceeding, sentencing, because Roy Lee was represented by separate counsel at sentencing and the trial had already concluded with the plea offer no longer available.

The majority's approach, in essence, turns the sentencing hearing into round one of a § 2255 habeas proceeding. This, I opine will only create an unnecessary delay in an already complicated sentencing hearing. This unnecessary interference with sentencing is certainly neither the purpose of Rule 44(c) nor encompassed in the mandate that a trial judge make further inquiry if the judge knew or reasonably should have known that a particular conflict of interest existed. Moreover, I would suggest that when this issue is raised so belatedly, it is best left to a habeas proceeding rather than an evidentiary hearing at sentencing. *Tatum,* 943 F.2d at 379 (typically, competency of counsel is best left within the province of collateral review).

I harbor additional cause for concern because I suspect that the majority's approach will instill a wait-and-see attitude in jointly-represented defendants. Jointly-represented defendants who did not receive a Rule 44(c) evidentiary hearing, or a further hearing when required, will now be inclined to go to trial and await the outcome of the jury verdict. If convicted, the jointly-represented defendants can conjure up an illustrious tale, similar I suspect to the one before us, as to why they were deprived of effective assistance of counsel, necessitating a Rule 44(c) hearing.

I am afraid the majority opinion, though disavowing this result, for all practical pur-

poses, appears to adopt a *per se* rule requiring reversal in the absence of a Rule 44(c) hearing—a conclusion we have categorically rejected. *Arias,* 678 F.2d at 1205. In summary, I glean one resounding thing from this record—unlike Stewart's struggle in *Glasser,* Rasnic's "struggle to serve two masters [can] seriously be doubted." *Glasser,* 315 U.S. at 75, 62 S.Ct. at 467. For these reasons, I would affirm the convictions and sentences of both defendants.*

---

* Even if I strained to find a conflict of interest here, the record is sufficiently developed to conclude that Roy Lee waived his right to conflict-free representation. *Holloway v. Arkansas,* 435 U.S. 475, 483 n. 5, 98 S.Ct. 1173, 1178 n. 5, 55 L.Ed.2d 426 (1978). Roy Lee was repeatedly appraised by his counsel of the perils of joint representation, but chose to attempt to "beat the rap" with his counsel of choice, Mr. Rasnic.