MURRAY, J.
In this criminal case, the sole issue the defendant, Michael Kirkling, raises is the excessiveness of the concurrent twenty-year maximum sentences imposed on him for count one (attempted carjacking as a second felony offender) and count two (purse snatching). For the reasons that follow, we affirm his convictions, adjudication as a second offender, and sentence as to count two, but vacate his sentence as to count one and remand for re-sentencing.
STATEMENT OF CASE
On September 9, 2002, the State filed a bill of information charging Mr. Kirkling with attempted carjacking, a violation of La. R.S. 14:64.2 and La. R.S. 14:27, and *788 purse snatching, a violation of La. R.S. 14:65.1. On September 12, 2002, Mr. Kirkling entered a not guilty plea at his arraignment. On March 25, 2003, the district court found probable cause and denied Mr. Kirkling’s motion to suppress the identification. On June 26, 2003, the district court denied Mr. Kirkling’s motion to suppress the inculpatory statement. On October 1, 2003, after waiving his right to a jury trial, Mr. Kirkling was tried and found guilty as charged. On October 15, 2003, he was sentenced to serve twenty years at hard labor on each jgcount with the sentences to run concurrently. The State then filed a multiple bill of information as to count one (attempted carjacking) to which Mr. Krk-ling pled not guilty.
On July 21, 2004, Mr. Krkling was adjudicated a second felony offender. After vacating the previous sentence imposed on count one, the district court resentenced Mr. Kirkling as a second felony offender to serve twenty years at hard labor with the sentence to run concurrently with any other sentences. The district court granted Mr. Kirkling’s motion for appeal.
STATEMENT OF FACTS
On July 11, 2002, at about 6:20 a.m., Barbara Bories,[1] who was en route to work, parked her car in her assigned parking space in a small lot located behind some condominiums in the 800 block of Julia Street in New Orleans. When she arrived at the parking lot that day, Ms. Bories spotted an unidentified man walking in the parking lot carrying a black gym bag. Because she normally was the only person in the lot at that time of day, she became suspicious. • She hurriedly gathered her things from inside of her vehicle, exited it, and locked it. As she hurriedly walked out of the parking lot, she heard footsteps running behind her and began screaming. According to Ms. Bories, the perpetrator grabbed her around the neck, and they both fell to the ground.
While they were on the ground, the perpetrator was on top of Ms. Bories, and she was screaming. The first thing the perpetrator did was try to take Ms. Bo-ries’s wedding rings, but she resisted by pulling her hand away. When he was | ¡¡unable to take her rings, he tried to bite her. Ms. Bories estimated that they wrestled on the ground for three or five minutes before he got off of her.
The next thing the perpetrator did was try to take Ms. Bories’s vehicle, which was a 4-Runner. He took her purse, which had fallen off her shoulder, and her keys, and walked over to her vehicle. He then attempted to open the car door. Ms. Bo-ries followed him and attempted to pull her purse away from him. He began kicking her to get her off of him. Although he succeeded in opening the car door and getting the key into the ignition, he was unable to start the vehicle because Ms. Bories had locked the steering wheel. Once he realized he was not going to be able to start the vehicle, he threw open the car door, hitting Ms. Bories with the door and knocking her to the ground.
Taking Ms. Bories’s purse, the perpetrator took off running up Julia Street towards Baronne Street. As he fled, he left his black gym bag behind. Ms. Bories found the gym bag lying on the ground near her vehicle. Inside the bag, she found clothes, personal items, and a receipt with Mr. Kirkling’s name and address on it from the temporary agency where he recently had worked. Ms. Bo-ries and a man from the condominiums *789 then began pursuing Mr. Kirkling. During the pursuit, Ms. Bories found her purse in the stanchion in the parking lot. The only item that was missing from her purse was her money.
At trial, Barry Carvo, through the aid of a sign language interpreter, testified that on the morning of the crime he was working in a print shop located adjacent to the parking lot and that, with his hearing aid, he heard Ms. Bories screaming and observed a man pushing her. He testified that he returned into the print shop and told his friend to call 911. Officer Stephanie Briscoe, a Senior Police Dispatcher, identified the 911 tape, and it was played at trial.
| ¿Officer Alita Richardson, who was working by herself that morning, testified that she responded to the report of a carjacking. As she was taking information, several people alerted her that Mr. Kirkling had just jumped the fence, and she observed him running on Julia Street towards Baronne Street. The officer broadcasted a description of him over her police radio and pursued him. Two other officers apprehended Mr. Kirkling shortly thereafter. Mr. Kirkling was returned to the scene where Ms. Bories positively identified him. He was arrested. In a subsequent search of his person, Ms. Bo-ries’s $157 cash was found. The money was copied and returned to her.
Mr. Kirkling gave an inculpatory statement to police that was recorded and played at trial. In that statement, Mr. Kirkling said that he was loaded on crack cocaine and desperate for some money to buy more drugs when he observed a lady by a truck and snatched her purse and car keys. He tried to take the truck to get away, but the truck would not start. He kept the purse and fled on foot around the corner across a fence. He dropped the purse in a shed or mechanic shop. He expressed sorrow for what he had done and stated that he was not in a right frame of mind.
At trial, Mr. Kirkling took the stand in his defense. He testified that he was trying to get home after a night of drinking and drugs when he suddenly decided that he wanted to continue getting high. At that time, he observed Ms. Bories, and the attack occurred. Mr. Kirkling testified that he only wanted to take her money and run. After the urge to continue his “high” passed, he testified that he regretted attacking Ms. Bories. On cross-examination, Mr. Kirkling acknowledged that he had three prior convictions. In 1992 or 1993, he was convicted of simple robbery |Rand simple auto burglary. In 1982, he was convicted of possession of stolen property.
ASSIGNMENT OF ERROR
By his sole assignment of error, Mr. Kirkling asserts that the concurrent twenty-year maximum sentences he received are excessive under the circumstances of this case. The State, on the other hand, asserts that the sentences are not excessive and should be affirmed. The initial issue we must address is whether Mr. Kirkling preserved this issue for appellate review.
Under La.C.Cr.P. art. 881.1,[2] a defendant may file a motion for reeonsid- *790 eration of sentence within thirty days following the imposition of sentence. The motion shall be oral if made at the time of sentencing or written if made thereafter, and it shall set forth the specific grounds on which it is based. La.C.Cr.P. art. 881.1 A(2). Absent the filing of a timely written motion for reconsideration of sentence or making of an oral objection at the sentencing hearing, a defendant is precluded from urging on appeal any ground of objection to the sentence. See La.C.Cr.P. art. 881.1(D).[3] Stated otherwise, “the failure to object to the sentence as excessive at the time of sentencing or to file a written motion to reconsider |fisentence precludes appellate review of the claim of excessiveness.” State v. Robinson, 98-1606, p. 9 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 125. Although Article 881.1 A(2) requires the motion set forth specific grounds, “a simple objection to the sentence is sufficient to preserve appellate review on the grounds of excessiveness.” State v. Miller, 2000-0218 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 111 (citing State v. Mims, 619 So.2d 1059 (La.1993)).[4]
The jurisprudence, has construed Article 881.1 as requiring a defendant who is multiple billed to file separate motions to reconsider his initial sentence and his new sentence imposed after his multiple bill adjudication. See State v. Chisolm, 99-1055, pp. 9-10 (La.App. 4 Cir. 9/27/00), 771 So.2d 205, 212 (citing State v. Lewis, 98-2575 (La.App. 4 Cir. 3/1/00), 755 So.2d 1025). For that reason, we apply these principles separately to Mr. Kirkling’s two sentencing hearings.
At the end of the October 15, 2003 sentencing hearing, the district court sentenced Mr. Kirkling to concurrent twenty year sentences on both count one (attempted carjacking) and count two (purse snatching).[5] Neither Mr. Kirkling nor his counsel objected at that original sentencing hearing to the sentences imposed. Nor did Mr. Kirkling or his counsel file a motion to reconsider within thirty days of that hearing.[6] Mr. Kirkling thus failed to preserve an objection as to his initial sentences.
|7On July 21, 2004, after multiple continuances, the multiple bill hearing was held. Mr. Kirkling was present with appointed counsel. The district court adjudicated Mr. Kirkling a second felony offender, set aside its previous sentence as to count one (attempted carjacking), and re *791 sentenced him again to twenty years on that count. Again, neither Mr. Kirkling nor his counsel objected to the sentence or filed a timely motion for reconsideration of that sentence. However, at the close of the multiple bill hearing, Mr. Kirkling asked the trial judge if he had received a letter from him. Although the judge indicated he had not read any letters from Mr. Kirkling, the judge accepted Mr. Kirkling’s offer to provide him with a copy of the letter. The judge also ordered that the letter, dated June 29, 2004, be filed in the record. A copy of that letter in which Mr. Kirkling requests the judge reconsider his sentence is in the record on appeal. Given these circumstances, we find the trial court’s express order at the conclusion of the multiple bill hearing that Mr. Kirk-ling’s letter be included in the record was equivalent to the trial court noting Mr. Kirkling’s objection to the sentence and thus sufficient to preserve his claim of excessiveness as to his re-sentencing on count one (attempted carjacking as a second felony offender). See Miller, supra.
The maximum sentence for attempted carjacking is ten years. La. R.S. 14:64.2 and La. R.S. 14:27. The applicable penalty for a second offender is imprisonment “for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.” La. R.S. 15:529.1 A(l)(a). Thus, the statutory sentencing range as to count one is five to twenty years. As noted, Mr. Kirkling challenges the trial court’s imposing on him the maximum sentence of twenty years.
| ^Article 1, Section 20 of the Louisiana Constitution of 1974 provides that “No law shall subject any person ... to cruel, excessive, or unusual punishment.” A sentence, although within the statutory limits, is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the purposeless and needless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4th Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Black, 98-0457, p. 7 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 891. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. Caston, 477 So.2d at 871. The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
The record reflects, as Mr. Kirkling argues, that the district court both in resen-tencing Mr. Kirkling as a second offender on count one (attempted carjacking) and in originally sentencing him on that count apparently was under the misimpression that the conviction was for carjacking. In originally sentencing Mr. Kirkling on count one, the district court imposed a twenty yeap sentence, yet the maximum sentence for attempted carjacking is only ten years. Likewise, at the multiple bill hearing, the district court, in noting that both crimes at issue are crimes of violence as defined by La. R.S. 14:2(13), stated that “[t]he first one is carjacking.”
IflAt the close of that multiple bill hearing, the district court after reading the letter addressed Mr. Kirkling. In doing so, the district court judge told Mr. Kirk-ling that the maximum actual sentence he could have received was forty years, which is the maximum sentence for carjacking. *792 Particularly, the judge’s statement to Mr. Kirkling was as follows:
“Mr. Kirkling, I really sympathize with you. But, Mr. Kirkling, recognize, the sentence you could have received is 40 years in the custody of the Department of Corrections. That’s actually what you could have received. Actually, you could have received more than that. If the State had truly multiple-billed you in this case, you could have gone to jail for life.... I am going to file this [letter] into your record, though, Mr. Kirkling, for any future reference, because you say some things that maybe ought to be in the record.” (Emphasis supplied).
As noted, the maximum sentence for a second offense based on attempted carjacking is only twenty years.
Because we cannot tell from the record if the district court in imposing a twenty-year sentence on Mr. Kirkling intended to impose a mid-range sentence (mistakenly believing the offense was carjacking) or a maximum sentence (for the correct offense of attempted carjacking as a second felony offender), we find it necessary to vacate the sentence imposed on count one and remand for resentencing on that count.
ERRORS PATENT
A review of the record for errors patent reveals only one. The minute entry of sentencing and the commitment order from July 21, 2004 fail to reflect that parole eligibility was restricted on Mr. Kirk-ling’s sentence as a second felony offender on count one as required by La. R.S. 14:64.2 and La. R.S. 14:27, and La. R.S. 15:529.1. However, the multiple bill transcript shows that parole eligibility was restricted. Where there is a conflict between the transcript and the minute |inentry, the transcript controls. State v. Jones, 557 So.2d 352 (La.App. 4th Cir. 1990). Therefore, Mr. Kirkling’s sentence is not illegally lenient.[7]
DECREE
For reasons stated above, we affirm the convictions, multiple offender adjudication, and sentence as to count two, but vacate the sentence as to count one and remand for re-sentencing.
CONVICTION, MULTIPLE BILL ADJUDICATION, AND SENTENCE ON COUNT TWO AFFIRMED; SENTENCE ON COUNT ONE VACATED; REMANDED FOR RESENTENCING.
McKAY, J., dissents in part with reasons.

. The victim's name is spelled in the trial transcript "Bories” and in other places in the record "Borries.” In this opinion, we use the spelling used in the transcript.

. La.C.Cr.P. art. 881.1 provides in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
(2) The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
*790 [[Image here]]
D. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.

. See State v. Robinson, 98-1606, p. 9 (La. App. 4 Cir. 8/11/99), 744 So.2d 119, 125; State v. Martin, 97-00319, p. 1 (La.App. 4 Cir. 10/1/97), 700 So.2d 1322, 1323; State v. Green, 93-1432, pp. 5-6 (La.App. 4 Cir. 4/17/96), 673 So.2d 262, 265; State v. Salom, 93-1635, p. 4 (La.App. 4 Cir. 12/28/94), 648 So.2d 494, 495-96.

. See also State v. Jefferson, 2002-1159, p. 7 (La.App. 4 Cir. 12/4/02), 834 So.2d 572, 576; state v. Thompson, 98-0988 (La.App. 4 Cir. 1/26/00), 752 So.2d 293.

. As noted elsewhere, the district court sentenced Mr. Kirkling on count one (attempted carjacking) to a sentence that was twice the maximum sentence for that offense. The maximum sentence for attempted carjacking is only ten years.

. We note, however, that at the original sentencing hearing, the district court noted that the State had filed a multiple bill as to count one and granted Mr. Kirkling’s counsel's motion to withdraw from representing him in the multiple bill hearing based on counsel’s representation that she had not been retained to represent him at the multiple bill hearing.

. Even though the commitment order provided to the Department of Corrections fails to show the restriction, as per La. R.S. 15:301.1 A and State v. Williams, 2000-1725 (La. 11/28/01), 800 So.2d 790, the sentence is deemed to have been imposed with the restriction.