ROLAND L. BELSOME, Judge.
| ¡.Defendant-Appellant appeals the trial court’s imposition of six consecutive ten-year sentences for his conviction of six counts of felony theft. For the reasons that follow, we affirm the conviction, vacate the sentences imposed by the trial court, and remand for resentencing.

FACTS AND PROCEDURAL HISTORY

On June 24, 2009, Defendant-Appellant John Colvin was charged by indictment with six counts of felony theft over five hundred dollars in violation of La. R.S. 14:67. The victims were individuals whose homes were destroyed during Hurricane Katrina. Defendant accepted payments from each of the six victims in amounts varying from $40,000 to $65,000, for a total of $247,000.00. In each case, after accepting payments from the victims, Defendant failed to build modular homes as promised. Defendant is currently sixty-four years of age and has no prior criminal record.
At his arraignment on June 29, 2009, Defendant entered a plea of not guilty. Counsel for Defendant filed several pretrial motions, including a motion for a preliminary hearing. On August 3, 2009, following a hearing, the trial court found probable cause for the issuance of an arrest warrant. Trial was set for November 9, 2009. On the day of trial, Defendant withdrew his pleas of not guilty and entered Dpleas of guilty as to all six counts. The trial court requested that a pre-sen-tence investigation report be prepared[1].
The trial court subsequently sentenced defendant to the maximum of ten years at hard labor on each of the six counts, to be served consecutively, and victim restitution. This appeal followed.

ERRORS PATENT

A review of the record for errors patent reveals none.

DISCUSSION

In his first assignment of error, Defendant asserts he has properly preserved for appellate review his claim that the sentences rendered are unconstitutionally excessive and that the trial court failed to properly consider mitigating factors for sentencing leniency.
La.C.Cr.P. art. 881.1 provides in pertinent part:
A. (1) Within thirty days following the imposition of sentence or within such longer period as the trial court may set at sentence, the state or the defendant may make or file a motion to reconsider sentence.
[[Image here]]
*672 B. The motion shall be oral at the time of sentencing or in writing thereafter and shall set forth the specific grounds on which the motion is based.
E. Failure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of exces-siveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review.
“[T]he failure to object to the sentence as excessive at the time of sentencing or to file a written motion to reconsider sentence precludes appellate review of the [4claim of excessiveness.” State v. Robinson, 98-1606, p. 9 (La.App. 4 Cir. 8/11/99), 744 So.2d 119, 125.
Defendant herein did not object or file a motion for reconsideration of sentence. In support of the assertion that his claim has been properly preserved, however, Defendant relies upon State v. Kirkling, 2004-1906, pp. 5-7, (La.App. 4 Cir. 5/18/05), 904 So.2d 786, 789-790, wherein the defendant was convicted of attempted carjacking as a second felony offender and purse snatching and asserted that the concurrent twenty-year maximum sentence was excessive under the circumstances. Although the defendant in Kirkling did not object to the sentence or file a motion for reconsideration, this Court held that a copy of a letter from the defendant asking the court to reconsider his sentence sufficed to preserve the defendant’s claim of excessive sentence:
Again, neither Mr. Kirkling nor his counsel objected to the sentence or filed a timely motion for reconsideration of that sentence. However, at the close of the multiple bill hearing, Mr. Kirkling asked the trial judge if he had received a letter from him. Although the judge indicated he had not read any letters from Mr. Kirkling, the judge accepted Mr. Kirkling’s offer to provide him with a copy of the letter. The judge also ordered that the letter, dated June 29, 2004, be filed in the record. A copy of that letter in which Mr. Kirkling requests the judge reconsider his sentence is in the record on appeal. Given these circumstances, we find the trial court’s express order at the conclusion of the multiple bill hearing that Mr. Kirkling’s letter be included in the record was equivalent to the trial court noting Mr. Kirkling’s objection to the sentence and thus sufficient to preserve his claim of excessiveness as to his re-sentencing on count one (attempted carjacking as a second felony offender). See [State v.] Miller, [00-0218 (La.App. 4 Cir. 7/25/01), 792 So.2d 104, 111].
Kirkling, 2004-1906, pp. 5-7, 904 So.2d 786, 791.
In this case, the record contains a written memorandum in support of probationary sentence filed on February 5, 2010, prior to the sentencing date of | ¡¡February 12, 2010. We find that Defendant’s memorandum, upon which the trial court signed, dated, and wrote the word “denied,” sufficiently preserved his claims for appellate review.
In his second assignment of error, Defendant argues that the trial court faded to give proper consideration to the mitigating factors for leniency set forth in his memorandum at the sentencing hearing. Defendant further argues that his sentences, which total sixty (60) years imprisonment, are unconstitutionally excessive and/or in violation of the statutory sentencing guidelines.
*673 Article 1, Section 20 of the Louisiana Constitution of 1974 prohibits “cruel, excessive, or unusual punishment.” A sentence within the statutory limits may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the needless and purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739, 751 (La.1992). A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Id. (citing State v. Hogan, 480 So.2d 288 (La.1985)).
The underlying offense is felony theft, a violation of La. R.S. 14:67. La. R.S. 14:67 provides, in pertinent part:
A. Theft is the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential.
(1) Whoever commits the crime of theft when the misappropriation or taking amounts to a value of one thousand five hundred dollars or more shall be imprisoned, with or without hard labor, for not more |fithan ten years, or may be fined not more than three thousand dollars, or both.
With regard to concurrent and consecutive sentences, La. C. Cr. P. art. 883 provides that sentences for crimes arising out of a single course of conduct are generally to be served concurrently:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
This Court has recognized that other factors must be considered when determining whether sentences should be served consecutively or concurrently. State v. Parker, 503 So.2d 643, 646 (La.Ct. App. 4th Cir.1987) (citing State v. Ortego, 382 So.2d 921, 923 (La.1980); State v. Ashley, 463 So.2d 794 (La.App. 2nd Cir.1985)). These factors include defendant’s criminal history, the dangerousness of the offense, the viciousness of the crimes, the harm done to the victim(s), the potential for the defendant’s rehabilitation, and the danger posed by the defendant to public safety. Parker, 503 So.2d at 646.
Additionally, while La. C. Cr. Pr. art. 894.1[2] provides sentencing guidelines, *674 “the imposition of consecutive sentences for crimes arising from a single course of 17conduct requires particular justification.” Id. (citing State v. Messer, 408 So.2d 1354 (La.1982); State v. Mosley, 466 So.2d 733 (La.App. 4th Cir.1985)).
lain the Memorandum in Support of Probationary Sentencing, Defendant advanced several alleged mitigating factors, and at the sentencing hearing, character witnesses testified on Defendant’s behalf. In the memorandum, Defendant argued that certain factors should be taken into consideration by the court pursuant to La. C. Cr. Pr. art. 894.1(B), including: there was no deliberate cruelty to the victims, as his crime was economic in nature; the victims were not vulnerable or incapable of resistance; he was not offered anything in return for the commission of the crime; he was not a resident of Louisiana, and the *675 victims freely entered into their contracts with him; there was no risk of death or great bodily harm in connection with his crime; he never used threats or actual violence; the crime did not result in a significant permanent injury; he did not employ a dangerous weapon or discharge a firearm in the commission of the crime; he was not persistently involved in similar offenses, as he was a businessman with vastly inferior business management practices; and the offense did not involve a controlled dangerous substance.
Defendant maintained that there were substantial grounds tending to excuse or justify his conduct, because he had previously worked in a structured environment wherein he was accountable as a State Legislator in Alabama and on the Water Board in Rainbow, Alabama. Defendant further argued that if given a probationary sentence, he would deliver restitution to the victims, which he would be unable to do while in prison. Defendant argued that imprisonment would result in excessive hardship on his family, and emphasized that he had no prior criminal record.
At Defendant’s sentencing hearing, numerous character witnesses attested to his good character and his reputation for honesty and generosity. A relative, Billy |flRay Colvin, testified that Defendant had served on the Water Board in Rainbow City, Alabama and had personally contributed to the installation of water meters in neighboring rural areas where families had no running water. There was further testimony that Defendant had served in the Alabama State Legislature. Alison Schneider, Defendant’s daughter, described Defendant as a “very fine” father who did good deeds spontaneously in his community. Ms. Schneider testified that Defendant, when running a convenience store he owned, would often not charge customers for milk, bread or eggs when it was apparent that the individual was scrounging for change. Defendant also often provided needy children in the community with Christmas toys, clothes and haircuts.
Ralph Burke, who served in the Alabama House of Representatives with Defendant, also testified. Mr. Burke testified that Defendant’s priorities consistently involved playgrounds at city parks, playgrounds at schools, gymnasiums, and other causes that would benefit children. Mr. Burke further testified that he and Defendant remained friends and worked together in the early 1990s making sales calls for carpeting, furniture, and portable classrooms, at which time Defendant paid Mr. Burke’s commission “without question and without failing.” With regard to restitution, Mr. Burke affirmed that there was no doubt in his mind that Defendant would make restitution for the victims. Mr. Burke also referenced a letter submitted to the trial court written by Jim Folsom, the Lieutenant Governor of Alabama, on Defendant’s behalf. Seth Hammett and Craig Ford also offered letters to the trial court in support of Defendant, attesting to Defendant’s good character and reputation during the time that Defendant served with Mr. Hammett and Mr. Ford in the Alabama House of Representatives. Defendant was also reputed to have helped in the rehabilitation of a University of hoAlabama football player who had turned to drugs. Mr. Burke testified that Defendant provided the football player with a job and allowed him to drive a vehicle to make sales calls, and made sure that the player returned to the YMCA every evening at 6:00 p.m. as ordered by the court.
April Pruitt, Defendant’s oldest daughter, also testified, stating that Defendant was a wonderful, supportive, loving, and very compassionate father. Ms. Pruitt further testified while in high school, she *676 was on the cheerleading squad, and Defendant personally purchased cheerleading uniforms for members of the squad who could not afford them so that they could participate. Ms. Pruitt also maintained that Defendant’s brother, Don Colvin, had offered to employ him in his plastering business.
In the pre-sentence investigation interview,[3] dated January 10, 2010, Defendant’s statement reads as follows:
The following information was obtained during an interview with the subject at Orleans Parish Prison on January 5, 2010. The subject started selling modular homes in 2007 to people in the region [ajffected by Hurricane Katrina. The subject claimed he ran into problems because he is not a licensed contractor in Louisiana and could not get the permits for the houses. The subject began working with Jerry Bonner of Pruitt Construction Company. Mr. Bonner was paid in advance to lay foundations for seven properties. The subject claims Mr. Bonner had to re-do one job several times and it cost over $100,000.00 to fix the mess. It took over three months to complete a job that should have taken two weeks. The subject claims that at this point, the owner of the first property did not pay her remaining balance of $46,000.00. The subject decided to go with another contractor, A. Stroughter, and when his mother became ill, he went to Alabama to care for her. The subject said he was in Alabama for about six months until his arrest. The subject said he paid all of the money to contractors and he did not use any of the money for personal gain.
Defendant also testified at his sentencing hearing, at which time he admitted wrongdoing, expressed remorse and his intent to pay restitution to the victims.
_JjjAt the hearing for victim impact statements and sentencing, held on February 12, 2010, after hearing the victims’ testimony, the State requested that Defendant receive the maximum sentence on each count, and that the sentences run consecutively:
THE COURT:
Thank you. Stand for sentencing, sir. Mr. Colvin, the court is entirely familiar with the facts of this case. I find the behavior unconscionable and, yes, predatory and deeply offensive. Half of my courtroom is filled right now with victims, people who were hurt by what you did to them. They’re older people, they’re working class people. You’ve not only taken their money from them, you’ve not only deprived them of the homes that they dreamed to be able to return to, but you’ve taken their dreams, you’ve taken their health in some instances. You’ve broken their spirit, sir. We heard from six witnesses. Mr. Joseph took the stand, he talked about upwards of $65,000 that he was bilked, that’s the only word to use, bilked. He was bilked out of $65,000. Ms. Rainey, $52,000; Ms. Turner, $45,000; Mr. King on behalf of his parents, over $48,000; Ms. Marshall, $47,000 and the final victim, whose name escapes me and I apologize.
MS. AFRICK:
Ms. Warfield.
COURT:
Thank you. $40,000. And you know what, not only have you done damage to these victims, but you’ve done damage to this entire community. You represent our worst fear. And this is not an isolated incident. This wasn’t a contract *677 dispute, this is not a civil matter. It’s a pattern of behavior aimed at bilking people out of their money, out of their hard earned money and frustrating their efforts to return to some degree of normalcy to retain not only their homes, but their lives. You took that away from them. You took that away from them. I want to even point out that these people have made this appearance today, the weather is horrendous outside. We’ve got rain, it’s cold, we’ve got sleet, we’ve got snow. I see elderly people, I see people |12who are obviously infirm, coming into court today because they wanted to speak their piece and I heard each and every one of them, as did this entire room.
Sir, I am so deeply, not only embarrassed, but offended, as a public servant, as an elected official, that you would invoke your service in the Alabama House of Representatives as somehow being in mitigation of the activities that you have been accused of and have pled guilty to. It’s horrible. I’m embarrassed for your family and I’m embarrassed for your colleagues and your former colleagues, hauling them into court to somehow put a better spin on this horrific series of events that are before me today. This has been a precipitous fall, sir. You go from being a public servant, an elected official, to being a public predator and a convicted felon. I’m truly embarrassed and sorry for your family and your friends, but I’m also very, very, very supportive of these victims’ outrage at what you have done to them.
Mr. Colvin, in exchange for your promises and all that you have done, sir, there’s a trail of lies and broken promises and empty lots, I’m sure I speak for these folks when I say that your apology rings hollow, sir, when these people are still struggling to this day. They don’t have homes, they’re struggling to pay their rents, some of them became ill, some of their family members. This is wrong. This is wrong, sir. I feel compelled to send the only message that I can and do hold you entirely responsible for your behavior.
After ordering that Defendant serve the maximum sentence for each of the six counts of felony theft, the court concluded:
If you ever have the good fortune of somehow being able to extricate yourself from this situation, sir, I’m also going to order that you pay restitution in full to these victims to make these people whole. You’ve irrevocably damaged these peoples’ lives. You’re going to carry that with you for the rest of your days.
With regard to reviewing a claim for excessive sentence, this Court has recognized that “[generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. haProc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case.” Robinson, p. 2, 744 So.2d at 127 (citing State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La.1982)). Accordingly, “[i]f adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” Id. at p. 2-3, 744 So.2d 119 (citing State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983)).
*678 A review of the record demonstrates that the trial court considered the memorandum, heard testimony from both character witnesses and Defendant in support of mitigation, and also considered testimony from each of the victims. Thus, the trial court complied with its obligation to examine and consider mitigating evidence despite the fact that the trial court did not articulate the mitigating factors specifically. Nevertheless, we find that the sentence imposed was not particularized to Defendant and the offense charged. See Robinson, p. 2, 744 So.2d at 127.
Notably, the Louisiana Supreme Court has held that courts should impose concurrent rather than consecutive sentences for offenders with no prior criminal record, such as Defendant:
For an offender without prior felony record, ordinarily concurrent rather than consecutive sentences should be imposed, especially where the convictions arise out of the same course of conduct within a relatively short period. State v. Watson, 372 So.2d 1205 (La. 1979); State v. Cox, 369 So.2d 118 (La. 1979). However, consecutive sentences may be justified when, due to his past conduct or repeated criminality over an extended period, the offender poses an unusual risk to the safety of the public, similar to those posed by habitual or by dangerous offenders. State v. Watson, supra.
State v. Jacobs, 383 So.2d 342, 345 (La.l980)(emphasis added); see also State v. Underwood, 353 So.2d 1013, 1019 (La. 1977)(“Based on American theory and practice concurrent rather than consecutive sentences are the usual rule, at least for a defendant without criminal record and in the absence of a showing that the public safety requires a longer sentence”).
Similarly, in State v. Ferguson, 2010-0199 (La.App. 4 Cir. 6/30/2010), 43 So.3d 291, the defendant therein pled guilty in two separate cases to fifteen counts of theft of property valued at over $500.00 and one count of misapplication of funds by a contractor. Unlike Defendant in the instant case, however, the defendant in Ferguson had two prior convictions for similar offenses; thus, this Court held that the trial court did not abuse its discretion in ordering the sentences to be served consecutively. Considering the Ferguson defendant’s two prior convictions, which this Court held demonstrated evidence of recidivism, our rationale in Ferguson simply cannot be analogized to the facts of this particular case, as Defendant has no prior convictions.
The State maintains that the sixty-year sentence is justified, relying upon State v. Hawkins, 06-1599 (La.App. 3 Cir. 5/2/07), 956 So.2d 146. In Hawkins, the defendant was convicted of two counts of simple burglary of an inhabited dwelling and seventeen counts of theft of a firearm. The trial court sentenced the defendant to twelve years at hard labor on each count of simple burglary, and ten years at hard labor on each count of theft of a firearm, with the sentences to run concurrently, but consecutively as to the sentences for simple burglary. In affirming the sentences, Third Circuit recognized the trial court’s finding that the defendant did not enter a guilty plea until it was apparent that some of his cohorts were prepared to testify against him; that the defendant refused to cooperate and | ^mitigate[4] the loss to the victims, that the defendant admitted to having drug problems in the past, and that defen *679 dant exhibited a total disregard for the victims’ property. The Hawkins defendant also had a past history of felony theft and simple burglary, unlike the Defendant in this case. Accordingly, the rationale of the court in Hawkins is inapplicable to the facts of this case.
Although mindful of the trial court’s discretion with regard to sentencing, we find that the sentences imposed are excessive under these particular facts and circumstances. Considering the mitigating evidence presented to the trial court, the age of Defendant, Defendant’s attempt to mitigate the loss to one of the victims before his arrest, and the fact that Defendant is non-violent and has no prior criminal record, we find that the trial court abused its discretion in ordering the six ten-year sentences to be served consecutively. See State v. Cox, supra. However, we do not find that a ten-year sentence is sufficient either, considering the extreme economic and emotional harm suffered by the victims in this case. Accordingly, the matter is remanded to the trial court for resen-tencing.
CONCLUSION
Defendant’s conviction is affirmed. The sentences are hereby vacated and the matter is remanded for resentencing in accordance with the views expressed in this opinion.
CONVICTION AFFIRMED; SENTENCES VACATED; REMANDED

. Ordering a pre-sentence investigative report is discretionary; there is no mandate that such a report be ordered. State v. Hayden, 98-2768, p. 27 (La.App. 4 Cir. 5/17/00), 767 So.2d 732, 748, citing La.C.Cr.P. art. 875(A)(1).

. La. Code Cr. Proc. art. 894.1(B) provides, in pertinent part: B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation: (1) The offender’s conduct during the commission of the offense manifested deliberate cruelty to the victim. (2) The offender knew or should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health. (3) The offender offered or has been offered or has given or received anything of value for *674 the commission of the offense. (4) The offender used his or her position or status to facilitate the commission of the offense. (5) The offender knowingly created a risk of death or great bodily harm to more than one person. (6) The offender used threats of or actual violence in the commission of the offense. (7) Subsequent to the offense, the offender used or caused others to use violence, force, or threats with the intent to influence the institution, conduct, or outcome of the criminal proceedings. (8) The offender committed the offense in order to facilitate or conceal the commission of another offense. (9) The offense resulted in a significant permanent injury or significant economic loss to the victim or his family. (10) The offender used a dangerous weapon in the commission of the offense. (11) The offense involved multiple victims or incidents for which separate sentences have not been imposed. (12) The offender was persistently involved in similar offenses not already considered as criminal histoiy or as a part of a multiple offender adjudication. (13) The offender was a leader or his violation was in concert with one or more other persons with respect to whom the offender occupied a position of organizer, a supervisory position, or any other position of management. (14) The offense was a major economic offense. (15) The offense was a controlled dangerous substance offense and the offender obtained substantial income or resources from ongoing drug activities. (16) The offense was a controlled dangerous substance offense in which the offender involved juveniles in the trafficking or distribution of drugs. (17) The offender committed the offense in furtherance of a terrorist action. (18) The offender foreseeably endangered human life by discharging a firearm during the commission of an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which, by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense. (19) The offender used a firearm or other dangerous weapon while committing or attempting to commit an offense which has, as an element, the use, attempted use, or threatened use of physical force against the person or property of another, and which by its very nature, involves a substantial risk that physical force may be used in the course of committing the offense. (20) The offender used a firearm or other dangerous weapon while committing or attempting to commit a controlled dangerous substance offense. (21) Any other relevant aggravating circumstances. (22) The defendant’s criminal conduct neither caused nor threatened serious harm. (23) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm. (24) The defendant acted under strong provocation. (25) There were substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense. (26) The victim of the defendant’s criminal conduct induced or facilitated its commission. (27) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained. (28) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime. (29) The defendant’s criminal conduct was the result of circumstances unlikely to recur. (30) The defendant is particularly likely to respond affirmatively to probationary treatment. (31) The imprisonment of the defendant would entail excessive hardship to himself or his dependents. (32) The defendant has voluntarily participated in a pretrial drug testing program. (33) Any other relevant mitigating circumstance.

. There was no sentencing recommendation in the probation report.

. At the victim impact hearing, one of the victims testified that Defendant returned $5,000.00 to him before Defendant’s arrest. Thus, unlike the defendant in Hawkins, Defendant in this case attempted to mitigate the loss to one of the victims.